1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9    DONOVAN PADDY,                     )
                                        )
10                  Plaintiff,          )          3:08-cv-00236-LRH-RAM
                                        )
11   v.                                 )
                                        )          ORDER
12   DAVID MULKEY, et al.,              )
                                        )
13                  Defendants.         )
     _____)

14

15         This court issued an order on April 16, 2009, granting the parties an opportunity to brief

16   why this case should not be stayed while Plaintiff Donovan Paddy exhausts his tribal remedies.

17   (#35[1].)  In accordance with the court's order, Paddy filed an opening brief (#41), Defendants David

18   Mulkey, Peggy Goins, Larry Curley, and Arlan Melendez filed a response (#42), and Paddy filed a

19   reply (#45).  The matter now stands submitted to the court.

20   **I.     Facts and Procedural History**

21         The following recitation of facts accepts the complaint's allegations as true.

22         Paddy was employed by the Reno-Sparks Indian Colony for over twenty years.  During his

23   employment he developed a serious medical condition requiring him to take leave from work.

24   Paddy informed Defendants of his need for medical leave, which was granted pursuant to the

25

26
     _____
            [1]Refers to the court's docket entry number

1  Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654.

2       Defendants Mulkey, Goins, and Curley fired Paddy for taking his leave.  Paddy appealed

3  this decision, but the same individuals who terminated Paddy also heard his appeal.  Paddy alleges

4  that these defendants placed themselves on his appeal committee to ensure his appeal would be

5  denied.  Moreover, Defendant Melendez met with Curley and Goins in order to interfere with

6  Plaintiff's rights to file an appeal.  Shortly after Paddy appealed the termination decision, he was

7  informed that he would not be allowed any appeal.  Paddy alleges Defendants' actions violate the

8  FMLA, interfered with contractual relations or a prospective business advantage, and constitute a

9  civil conspiracy.

10      Plaintiff originally filed suit in the Reno-Sparks Tribal Court for the Reno-Sparks Indian

11  Colony.  The tribal court complaint appears to arise out of the same set of facts as the present case.

12  In contrast to the present complaint, however, Paddy named several entities as defendants, namely

13  Reno-Sparks Indian Colony, the Reno-Sparks Indian Colony Public Works Department, the Reno-

14  Sparks Indian Colony Tribal Council, and the Reno-Sparks Indian Colony Human Resource

15  Department.  On March 28, 2008, Paddy voluntarily dismissed his tribal court case.

16      After filing suit in this court on May 5, 2008, Defendants moved to dismiss on the basis that

17  they are entitled to sovereign immunity as arms of a federally recognized Indian tribe.  On April 16,

18  2009, this court, sua sponte, issued an order granting the parties an opportunity to brief why this

19  case should not be stayed while Paddy exhausts his tribal remedies.  This order was issued pursuant

20  to the Ninth Circuit's instruction that "[a] district court has no discretion to relieve a litigant from

21  the duty to exhaust tribal remedies prior to proceeding in federal court."  *Allstate Indem. Co. v.*

22  *Stump*, 191 F.3d 1071, 1073 (9th Cir. 1999).  The court now turns to whether this case must be

23  stayed while Paddy exhausts his tribal remedies.

24  ///

25  ///

26
                                        2

1  **II.   Legal Standard**

2  "Ordinarily, so long as there is a colorable question whether a tribal court has subject matter

3  jurisdiction, federal courts will stay or dismiss an action in federal court to permit a tribal court to

4  determine in the first instance whether it has the power to exercise subject-matter jurisdiction in a

5  civil dispute between Indians and non-Indians that arises on an Indian reservation." *Smith v.*

6  *Kootenai Coll.*, 434 F.3d 1127, 1131 n.1 (9th Cir. 2006) (en banc) (*quoting Stock W. Corp. v.*

7  *Taylor*, 964 F.2d 912, 919 (9th Cir. 1992)) (emphasis and internal quotation marks omitted).

8  "Tribal jurisdiction cases are not easily encapsulated, nor do they lend themselves to

9  simplified analysis." *Phillip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 937

10  (9th Cir. 2009).  Nevertheless, the Ninth Circuit has set forth a framework for deciding whether a

11  plaintiff must exhaust his tribal remedies.  First, a court looks to whether the party resisting tribal

12  jurisdiction is a tribal member.  *Id.*  Under the "pathmarking" Supreme Court case *Montana v.*

13  *United States*, "the inherent sovereign powers of an Indian tribe do not extend to the activities of

14  nonmembers of the tribe."  450 U.S. 544, 565 (1981); *Elliot v. White Mountain Apache Tribal*

15  *Court*, 566 F.3d 842, 848 (9th Cir. 2009).  This restriction is subject to two exceptions first

16  enunciated in *Montana*: "The first exception relates to nonmembers who enter consensual

17  relationships with the tribe or its members; the second concerns activity that directly affects the

18  tribe's political integrity, economic security, health, or welfare."  *Id.*

19  If neither of these exceptions is applicable, courts consider whether Congress has conferred

20  tribal jurisdiction.  *Id.*  Finally, tribal jurisdiction is cabined by geography: "The jurisdiction of

21  tribal courts does not extend beyond tribal boundaries."  *Id.* (*citing Atkinson Trading Co. v. Shirley*,

22  532 U.S. 645, 657 n.12 (2001)).

23  **III.   Discussion**

24  Turning first to the membership status of Paddy–the only party resisting tribal jurisdiction–

25  no party has indicated Paddy is a tribal member; thus, the court must proceed to the next step of its

26

3

1    analysis to decide whether a tribal court may assert jurisdiction over Paddy under either of the

2    *Montana* exceptions.[2]

3         The first *Montana* exception allows a tribal court to exercise jurisdiction over a nonmember

4    who enters a consensual relationship with the tribe or its members.  *Id.*  Paddy does not challenge

5    Defendants' contention that he was in a consensual relationship with the tribe through his

6    employment.  Indeed, Paddy's complaint alleges that he "worked for the Reno-Sparks Indian

7    Colony for over twenty (20) years."  (Compl. (#1) ¶ 2.)  Under these facts, Paddy falls comfortably

8    within the first *Montana* exception.  *See also FMC v. Shoshone-Bannock Tribes*, 905 F.2d 1311,

9    1315 (9th Cir. 1990) (finding a consensual relationship under the first *Montana* exception based in

10   part on a nontribal business's employment of tribal employees).

11        Paddy's primary challenge to tribal exhaustion is his contention that Congress explicitly

12   divested tribal courts of jurisdiction to hear cases under the FMLA.  As a preliminary matter, the

13   court notes that Paddy's position appears foreclosed by *Sharber v. Spirit Mountain Gaming Inc.*,

14   where the Ninth Circuit found, "The district court did not err in concluding that tribal courts should

15   have the first opportunity to determine whether they have jurisdiction to hear actions based on the

16   Family and Medical Leave Act."  343 F.3d 974, 975 (9th Cir. 2003) (per curiam).  As such, the

17   Ninth Circuit has implicitly held that tribal exhaustion may be ordered in FMLA cases.

18   Nevertheless, this court acknowledges *Sharber* was a brief per curiam opinion with little analysis

19   and no discussion of the case's facts.  The court will therefore provide a more thorough analysis of

20   Paddy's challenge to tribal court jurisdiction.

21   ─────────────────

22        [2]Paddy contends for the first time in his reply that "[t]here is . . . no proof as to whether the individual
     defendants are in fact members of the Reno-Sparks Indian Colony."  (Reply (#45) at 7:11-13.)  Although
23   defendants' membership status may raise additional questions as to tribal jurisdiction, *but see Atwood v. Fort
     Peck Tribal Court Assiniboine*, 513 F.3d 943, 945 n.1, 948 (9th Cir. 2008) (finding colorable tribal jurisdiction
24   when the plaintiff was not a tribal member and the defendant's tribal status was "not entirely clear"), Paddy
     has not disputed Defendants' contention that "this case involves **tribal defendants** being sued for events that
25   took place on tribal lands by a plaintiff who chose to work under the employ of the tribe."  (Resp. (#42) at 7:1-
     3) (emphasis in original).  Paddy's contention that "there is no proof" is insufficient to put defendants' tribal
26   status at issue particularly when raised for first time in his reply.

1      In *Strate v. A-1 Contractors*, the Supreme Court recognized exceptions to the rule that a

2   federal court should stay its hand until after a tribal court has had a full opportunity to determine its

3   own jurisdiction.  520 U.S. 438, 449 & n.7 (1997).  There, a car accident took place on a public

4   highway maintained by North Dakota under a federally granted right-of-way over Indian

5   reservation land.  *Id.* at 442.  The plaintiff brought suit against the other driver and the driver's

6   employer, neither of which was a tribal member.  *Id.* at 443.  The Court concluded that a tribal

7   court did not have jurisdiction over the case because the party resisting tribal jurisdiction was not a

8   tribal member, and the case arose on nontribal land.  *See id.* at 453-56.  Moreover, no *Montana*

9   exception brought the case within the tribe's inherent sovereignty, and no congressional grant

10  vested the tribal court with jurisdiction.  *See id.* at 456-59.

11      Turning to whether the plaintiff should nonetheless have been required to exhaust her tribal

12  remedies, the *Strate* Court recognized that "exhaustion is not an unyielding requirement: We do

13  not suggest that exhaustion would be required where an assertion of tribal jurisdiction 'is motivated

14  by a desire to harass or is conducted in bad faith,' or where the action is patently violative of

15  express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an

16  adequate opportunity to challenge the court's jurisdiction."  *Id.* at 449 n.7 (*quoting Nat'l Farmers*

17  *Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.21 (1985)) (internal quotation marks

18  omitted).  Notably, the Court also recognized a new exception to tribal exhaustion:  "When . . . it is

19  plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered

20  by *Montana*'s main rule, it will be equally evident that tribal courts lack adjudicatory authority over

21  disputes arising from such conduct."  *Id.* at 459 n.14.  Therefore, the Court found, "when

22  tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise

23  applicable exhaustion requirement must give way, for it would serve no purpose other than delay."

24  *Id.* (citation omitted).

25      In *Nevada v. Hicks*, 533 U.S. 353 (2001), the Supreme Court extended the new *Strate*

26

1   exception to a tribal member's claims under 42 U.S.C. § 1983.  The tribal member alleged state

2   law enforcement officials violated his constitutional rights while executing a search warrant at his

3   home, which was on tribal land. *Id.* at 356-57.  The plaintiff initially brought suit in tribal court,

4   but the state officials filed an action in district court seeking a declaratory judgment that the tribal

5   court lacked jurisdiction. *Id.* at 357.  The district court and the Ninth Circuit both declined to find

6   the tribal court lacked jurisdiction. *Id.*  Granting the defendants' petition for writ of certiorari, the

7   Supreme Court held that tribes do not have inherent sovereignty to adjudicate state officers

8   executing a search warrant related to the off-reservation violation of state law. *See id.* at 364.

9        After determining the tribal court lacked jurisdiction under *Montana,* the *Hicks* Court also

10   concluded Congress did not confer tribal jurisdiction over the case. *See id.* at 366-69.  The Court,

11   however, did not end its analysis there but proceeded to consider whether tribal courts can entertain

12   §1983 cases at all. *See id.*  The Court found that tribal court jurisdiction would create serious

13   anomalies because the general federal question removal statute, 28 U.S.C. § 1441, refers only to

14   removal from state court. *Id.* at 368.  Under this abstraction, the Court observed, defendants in

15   tribal court would inexplicably lack the removal right enjoyed by state court § 1983 defendants. *Id.*

16   Deeming this scenario untenable, the Court found tribal courts cannot entertain § 1983 suits. *See*

17   *id.* at 368-69.  Turning then to the issue of tribal exhaustion, the court found exhaustion

18   unnecessary because it would "would serve no purpose other than delay." *Id.* at 369.

19        Relying on the *Hicks* holding that tribal courts lack jurisdiction over § 1983 claims, Paddy

20   argues tribal courts similarly lack jurisdiction over FMLA actions, and therefore this court should

21   not require tribal exhaustion.  In particular, Paddy points to the FMLA civil enforcement provision,

22   which states, "An action to recover . . .  damages or equitable relief . . .  may be maintained . . . in

23   any Federal or State court of competent jurisdiction . . . ."  29 U.S.C. § 2617(a)(2).  Based upon

24   this provision, Paddy argues that tribal courts lack jurisdiction over FMLA actions because the

25   statute speaks only of enforcement actions in "any Federal or State court of competent

26

1  jurisdiction."  Accordingly, Paddy argues, no tribal exhaustion is warranted here.

2         The court disagrees with Paddy for several reasons.  First, *Hicks* did not purport to overrule

3  the Supreme Court's precedents establishing that a plaintiff must exhaust his tribal remedies even

4  if tribal jurisdiction is not conclusively established.[3]  The only arguably new exhaustion exception

5  announced in *Hicks* was its application of the *Strate* exception that exhaustion is unnecessary

6  "[w]hen . . . it is plain that no federal grant provides for tribal governance of nonmembers' conduct

7  on land covered by *Montana*'s main rule, so the exhaustion requirement would serve no purpose

8  other than delay."  *Hicks*, 533 U.S. at 369 (internal quotation marks omitted).  Employing this

9  exception, the *Hicks* Court concluded, "Though this exception too is technically inapplicable, the

10  reasoning behind it is not.  Since it is clear, as we have discussed, that tribal courts lack jurisdiction

11  over state officials for causes of action relating to their performance of official duties, adherence to

12  the tribal exhaustion requirement in such cases 'would serve no purpose other than delay,' and is

13  therefore unnecessary."  *Id.* at 369.

14         The Court's reasoning in *Hicks* is notable because it makes no effort to overrule the

15  exhaustion exception most relevant to this case, that is, "where the action is patently violative of

16  express jurisdictional prohibitions."  *See id.*  In this case, allowing a tribal court to consider its

17  jurisdiction under the FMLA would not be patently violative of 29 U.S.C. § 2617(a)(2)'s civil

18  enforcement provision that "[a]n action to recover . . . damages or equitable relief . . .  may be

19  maintained . . . in any Federal or State court of competent jurisdiction."  As evidenced by its text,

20  § 2617(a)(2) does not use mandatory language such as "must" or "shall" when providing for state

21  and federal jurisdiction but instead uses the permissive "may."  The court therefore cannot say

22  tribal jurisdiction would be patently violate of express jurisdictional prohibitions, nor–as stated by

23  ─────────────────────

24         [3]*See Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) (holding that
   a tribal court should be given the first opportunity to evaluate the factual and legal bases for a challenge to its

25  jurisdiction); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987) ("[F]ederal policy supporting tribal
   self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to

26  determine its own jurisdiction.'").

*Hicks*–is it "plain" that tribal courts lack jurisdiction over this dispute.[4]  *See also Elliot v. White Mountain Apache Tribal Court*, 566 F.3d 842, 848 (9th Cir. 2009) (requiring exhaustion if tribal jurisdiction is colorable or plausible).

Moreover, the Ninth Circuit has not construed *Hicks* to require a conclusive ruling on tribal jurisdiction.  In *Boozer v. Wilder*, the Ninth Circuit considered whether a tribal court should have the first opportunity to determine its jurisdiction under 25 U.S.C. § 1911(a), the Indian Child Welfare Act.  381 F.3d 931 (9th Cir. 2004).  Subsection 1911(a) provides that "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe . . . ."  The plaintiff in *Boozer* filed suit in federal court seeking a declaratory judgment that a tribal court did not have jurisdiction to adjudicate his child's custody because the child was not domiciled on the reservation.  *Id.* at 935.  The Ninth Circuit concluded the plaintiff had to exhaust his tribal remedies because, among other reasons, it was not "frivolous" to maintain that the child resided on the reservation.  *Id.* at 935 n.3.  Thus, even post-*Hicks*, the Ninth Circuit has declined to make a final determination of a tribal court's jurisdiction when deciding the issue of exhaustion.

Although the above analysis demonstrates that this case must be stayed, the court will address a few of Paddy's additional arguments in opposition to exhaustion.  First, Paddy contends that tribal court jurisdiction is not colorable because Defendants have not cited tribal law establishing personal and subject-matter jurisdiction over this matter.  The court disagrees that such a showing is necessary to demonstrate colorable tribal jurisdiction.  While the Ninth Circuit has mentioned tribal law concerning personal and subject-matter jurisdiction, *see Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1140 n.7 (9th Cir. 2006) (en banc); *Stock W. Corp. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 n.17 (9th Cir. 1989), this court is aware of

---

[4]The court also notes that tribal courts generally have jurisdiction to adjudicate federal statutes.  *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 485 n.7 (1999) ("Under normal circumstances, tribal courts, like state courts, can and do decide questions of federal law . . . .").

no authority requiring the application of tribal law to show colorable tribal jurisdiction. *Cf. Elliot v. White Mountain Apache Tribal Court*, 566 F.3d 842 (9th Cir. 2009) (ordering exhaustion without any mention of tribal law).

Furthermore, it is not entirely clear whether the Ninth Circuit requires a showing of personal jurisdiction even if raised by the party resisting tribal exhaustion. *See Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1075-76 (9th Cir. 1999) (discussing personal jurisdiction without indicating its relationship to colorable tribal jurisdiction). Nonetheless, even if required, the face of Paddy's complaint presents at least a colorable case of tribal personal jurisdiction, as this action arises out of Paddy's employment relationship with the Reno-Sparks Indian Colony. *See Ciena Corp. v. Jarrad*, 203 F.3d 312, 317-18 (4th Cir. 2000) (finding personal jurisdiction over a defendant-employee in the state of her former employer's headquarters when the lawsuit arose from their employment relationship).

Last, the court rejects Paddy's assertion that Defendants have exhibited bad faith in seeking tribal exhaustion. The matter of exhaustion was raised sua sponte. The court cannot impute improper motives to Defendants based upon their conformance to the court's briefing order

**IV.   Conclusion**

Paddy's employment relationship with the Reno-Sparks Indian Colony creates colorable jurisdiction in the Reno-Sparks Tribal Court for the Reno-Sparks Indian Colony. Principles of comity therefore require the court to stay this action while Paddy exhausts his tribal remedies.

///

///

///

///

///

///

1       IT IS THEREFORE ORDERED that this case shall be STAYED while Plaintiff Donovan

2  Paddy exhausts his tribal remedies.

3       IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (#14) is DENIED

4  without prejudice.

5       IT IS FURTHER ORDERED that the parties shall file a status report with this court every

6  six (6) months from the date of this order.

7       IT IS SO ORDERED.

8       DATED this 21st day of August, 2009.

9

10                                          _____

11                                          LARRY R. HICKS
                                            UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                          10